IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TRACEY E. GEORGE, ELLEN WRIGHT )
CLAYTON, DEBORAH WEBSTER-CLAIR, )
KENNETH T. WHALUM Jr., MERYL RICE, )
JAN LIFF, TERESA M. HALLORAN, and )
MARY HOWARD HAYES, )
             )
   Plaintiffs, )
             )
v.              )   Case No. _____
             )
WILLIAM EDWARD "BILL" HASLAM, )
as Governor of the State of Tennessee, )
in his official capacity; TRE HARGETT, as )
Secretary of State, in his official capacity; )
MARK GOINS, as Coordinator of Elections, in )
his official capacity; HERBERT H. )
SLATERY III, as Attorney General & Reporter )
of the State of Tennessee, in his official )
capacity; STATE ELECTION COMMISSION )
OF TENNESSEE; JUDY BLACKBURN, as a )
member of the State Election Commission, in )
her official capacity; DONNA BARRETT, as a )
member of the State Election Commission, in )
her official capacity; GREG DUCKETT, as a )
member of the State Election Commission, in )
his official capacity; TOMMY HEAD, as a )
member of the State Election Commission, )
in his official capacity; JIMMY WALLACE, )
as a member of the State Election Commission, )
in his official capacity; TOM WHEELER, as a )
member of the State Election Commission, in )
his official capacity; and KENT YOUNCE, as )
a member of the State Election Commission, in )
his official capacity, )
             )
   Defendants. )

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# INTRODUCTION

1. Plaintiffs bring this action to challenge the constitutionality of the method by which votes were counted on Constitutional Amendment 1 to the Tennessee Constitution on the November 4, 2014 state and federal general election ballot ("Amendment 1"). Specifically, Plaintiffs contend that Defendants violated their rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution by not tabulating the votes on Amendment 1 in compliance with Article XI, Section 3 of the Tennessee Constitution.

2. Plaintiffs are registered and qualified voters who voted in the November 4, 2014 election. Plaintiffs each voted in the gubernatorial race and voted not to approve Amendment 1.

3. Defendants are all officials or official entities of the state of Tennessee. Each defendant either oversees, administers, or regulates elections in some capacity and is charged with upholding and enforcing the state constitution.

4. In Article XI, Section 3, the Tennessee Constitution states:

> Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals with the yeas and nays thereon, and referred to the General Assembly then next to be chosen; and shall be published six months previous to the time of making such choice; and if in the General Assembly then next chosen as aforesaid, such proposed amendment or amendments shall be agreed to by two-thirds of all the members elected to each house, then it shall be the duty of the General Assembly to submit such proposed amendment or amendments to the people at the next general election in which a governor is to be chosen. **And if the people shall approve and ratify such amendment or amendments by a majority of all the citizens of the state voting for governor, voting in their favor, such amendment or amendments shall become a part of this Constitution.**

Tenn. Const. Art. XI, § 3 (emphasis added). This section sets forth the state constitutional requirements for an amendment to the constitution to be approved and ratified.

5. In spite of Article XI, Section 3, Defendants have tabulated the vote on Amendment 1 by examining whether the number of total votes in favor of Amendment 1, regardless of whether

the voter also voted for governor, would constitute a majority of the total number of votes cast in the gubernatorial race. *See, e.g.*, Associated Press, *News Briefs from Around Tennessee at 1:58 a.m. EDT*, THE WASHINGTON TIMES, October 29, 2014, www.washingtontimes.com/news/2014/oct/29/news-briefs-from-around-tennessee-at-158-am-edt/ (quoting Blake Fontenay, spokesperson for the Secretary of State, explaining "[w]hether people vote in the governor's race doesn't affect their eligibility to vote on the amendments"); *see also* Cari Wade Gervin, *Your Guide to the four propositions of Tuesday's ballot*, THE NASHVILLE SCENE, October 30, 2014, www.nashvillescene.com/nashville/your-guide-to-the-four-propositions-on-tuesdays-ballot/Content?oid=4759989 (quoting Fontenay's statement that "[t]here is no requirement to vote in any race"); Ronald B. Buchanan [chair of the Davidson County Election Commission], *Primer for Davidson County Voters*, THE TENNESSEAN, October 12, 2014, www.tennessean.com/story/opinion/2014/10/13/primer-davidson-county-voters/17131215 ("The total number of votes cast in the gubernatorial election is used to determine the number of 'yes' votes required for an amendment to pass . . . it is not necessary to vote for an amendment in order to vote in the governor's race and vice versa. Your vote is still counted."). Defendants have added further confusion surrounding the vote count on Amendment 1 by posting results on their website that do not conform to either Article XI, Section 3 or to the method contained in the public statements of a spokesperson for the Secretary of State.

6. Defendants' tabulation method flouts Article XI, Section 3's mandate that proposed amendments must be approved by "a majority of all citizens *voting for governor*, voting in their favor." Instead, Defendants misconstrue Section 3 to say that Amendment 1 may be ratified if the total number of votes cast in favor of Amendment 1 equaled or exceeded the number of votes required to achieve a majority in the governor's race. This interpretation ignores Section 3's plain statement that the requisite majority is comprised of citizens who voted for governor and who also voted in favor of Amendment 1.

7. Whereas the state constitution's text demands that Amendment 1 will only pass if it is approved "by a majority of all the citizens of the state voting for governor, voting in [its] favor," Tenn. Const. Art. XI, § 3, Defendants appear to have read Section 3 to say that Amendment 1 would pass if "the number of citizens of the state voting in its favor equals or exceeds the number of votes required for a majority in the governor's race." Put differently, Defendants counted the votes on Amendment 1 without first establishing whether each "yes" voter met Section 3's threshold of having also voted for governor.

8. Defendants' calculation method subjects Tennessee voters like Plaintiffs who complied with Article XI, Section 3's mandate to a coordinated scheme that is not contemplated by—and indeed is strictly prohibited by the text of—Tennessee's Constitution. In this misguided scheme, voters in favor of Amendment 1 intentionally voted for Amendment 1 while declining to participate in the governor's race. The apparent intent was to add "yes" votes without increasing the number of votes needed to surpass a majority of votes cast in the governor's race. Supporters of Amendment 1 have been promulgating this scheme. *See, e.g.*, "Tenn Williamson," *Double Your Vote on Amendment 1*, www.youtube.com/watch?v=7mnIgn-WXls (explaining that supporters of Amendment 1 can "double their vote" by voting for Amendment 1 but not voting in the governor's race) (last visited November 5, 2014) (also available at www.truthon1.org); Cathedral of the Incarnation, *Twenty Eighth Sunday in Ordinary Time—October 12, 2014*, at 4 ("You do not need to vote for governor if you do not want to. *In fact, not voting in the uncontested governor's race counts as a vote and a half for Amendment 1.*") [Attached as Exhibit A]. The Defendants' method for counting votes on Amendment 1, and their public statements concerning the issue, not only fail to comply with Article XI, Section 3 of the Tennessee Constitution, but also encourage the efforts of some voters to manipulate the system by voting for Amendment 1 and expressly *not* voting in the governor's election.

9. Defendants' method for counting the number of votes regarding Amendment 1 violates each Plaintiff's right under the Due Process clause of the Fourteenth Amendment to a fair election. "The Due Process clause is implicated, and [42 U.S.C.] § 1983 relief is appropriate, in the exceptional case where a state's voting system is fundamentally unfair." *League of Women Voters v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008) (citing *Griffin v. Burns*, 570 F.2d 1065, 1078-79 (1st Cir. 1978)). Defendants' proposed counting method presents such a fundamentally unfair system by disregarding the plain language of the state constitution and by arbitrarily developing a different standard for approving public votes on constitutional amendments. For Defendants' tabulation method to be upheld, it must withstand strict scrutiny. Because Defendants lack any valid interest—let alone a compelling governmental interest—to justify ignoring the text of Tennessee's Constitution, Defendants' vote tabulation does not survive strict scrutiny.

10. Defendants' proposed counting method also violates the Equal Protection Clause of the Fourteenth Amendment both by diluting the votes on Amendment 1 of those voters who complied with the Tennessee Constitution, engaged fully in their civic duty to vote, and exercised their right to vote for governor and by overvaluing the votes of Amendment 1 supporters who chose not to cast a vote for governor.

11. "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." *Bush v. Gore*, 531 U.S. 98, 104 (2000). "In decision after decision, [the Supreme] Court has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (string citations omitted). By failing to comply with Article XI, Section 3, Defendants treat Plaintiffs and their votes disparately, thereby effectively denying Plaintiffs' free exercise of franchise. *See Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("The right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.").

Because Defendants' tabulation method burdens the fundamental right to vote, it is subject to strict scrutiny, which it cannot withstand.

12. Defendants' counting method violates the Fourteenth Amendment's Equal Protection clause by differentially valuing votes from the voters of two classes—those like Plaintiffs who complied with Article XI, Section 3 by voting in the gubernatorial race as well as on Amendment 1 and those who did not and merely voted on Amendment 1—to the detriment of Plaintiffs and others who complied with the Constitution. "The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government." *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969). Defendants have valued the votes on Amendment 1 of the non-Constitution-compliant voters over the votes of Plaintiffs. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush* 531 U.S. at 104-05 (2000) (citing *Harper v. Virginia Bd. of Elections,* 383 U.S. 663, 665 (1966)). This unequal weighting of improperly cast votes on Amendment 1 threatens the fundamental right to vote and cannot withstand strict scrutiny.

13. Plaintiffs bring this action for declaratory and injunctive relief against Defendants pursuant to 42 U.S.C. § 1983, Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202. Plaintiffs seek (1) a declaration that Article XI, Section 3 of the Tennessee Constitution requires that only voters who voted for governor may have their votes on Amendment 1 counted to determine whether the amendment is ratified; (2) an injunction preventing Defendants from certifying the vote on Amendment 1 until Defendants comply with the counting mechanism prescribed in Article XI, Section 3; and (3) a declaration that the vote on Amendment 1 in the November 4, 2014 election is void.

# THE PARTIES

14. Plaintiff Tracey E. George is a Professor of Law and Professor of Political Science at Vanderbilt University. Professor George is a resident of Nashville, Tennessee. She cast a vote for governor and a vote on Amendment 1 in the November 4, 2014 election. She wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

15. Plaintiff Ellen Wright Clayton is a Professor of Pediatrics and Professor of Law at Vanderbilt University. Dr. Clayton is a resident of Nashville, Tennessee who voted both for governor and on Amendment 1 in the November 4, 2014 election. Dr. Clayton wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

16. Plaintiff Deborah Webster-Clair is an Obstetrician and Gynecologist who resides in Brentwood, Tennessee. Dr. Webster-Clair wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

17. Plaintiff Kenneth T. Whalum Jr. is the pastor of the New Olivet Baptist Church in Memphis, Tennessee and is a resident of Memphis. Rev. Whalum wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having his vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

18. Plaintiff Meryl Rice is a social worker and small business owner who resides in Whiteville, Tennessee. Ms. Rice wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

19. Plaintiff Jan Liff is a registered nurse and lifelong resident of Nashville, Tennessee. Ms. Liff wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

20. Plaintiff Teresa M. Halloran is the volunteer coordinator for Meals on Wheels in Franklin, Tennessee, where she resides. Ms. Halloran wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

21. Plaintiff Mary Howard Hayes is a resident of Gallatin, Tennessee and the former Director of the Public Health Department of Sumner County. Ms. Hayes wishes to have the vote on Amendment 1 calculated in compliance Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

22. Defendant William Edwards "Bill" Haslam is Governor of the State of Tennessee. Article III, Section 10 of the Tennessee Constitution requires the governor to "take care that the laws be faithfully executed." He is responsible for upholding and ensuring compliance with the state constitution. Governor Haslam also bears the authority and responsibility for the formulation and administration of the policies of the executive branch, including the Department of State, which oversees elections in the state. Governor Haslam is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. Governor Haslam's official residence is in Nashville, Tennessee, within the Middle District. He is sued in his official capacity.

23. Defendant Tre Hargett is the Tennessee Secretary of State. The Secretary of State is a Constitutional Officer charged with overseeing the Department of State. In his official capacity, Secretary Hargett is responsible for overseeing the Division of Elections of the Secretary of State's office. Secretary Hargett is a person within the meaning of 42 U.S.C. § 1983 and was

acting under color of state law at all times relevant to this complaint. He is sued in his official capacity.

24. Defendant Mark Goins is the Coordinator of Elections for Tennessee. The Coordinator of Elections heads the Division of Elections. Coordinator Goins oversees the election process in Tennessee. As Coordinator of Elections, he has the duty to "[a]uthoritatively interpret the election laws for all persons administering them." Tenn. Code Ann. § 2-11-202(a)(4). Coordinator Goins is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. He is sued in his official capacity.

25. Defendant Herbert H. Slattery III is the Attorney General & Reporter of the State of Tennessee. He is sued in his official capacity because the constitutionality of Defendants' vote tabulation process is challenged in this case.

26. Defendants Judy Blackburn, Donna Barrett, Gregg Duckett, Tommy Head, Jimmy Wallace, Tom Wheeler, and Kent Younce are the members of defendant, the State Election Commission of Tennessee. All are sued in their official capacities. The State Election Commission works to maintain uniformity in elections and preserve the purity of the ballot.

## JURISDICTION AND VENUE

27. Plaintiffs bring this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 to redress the deprivation under color of state law of rights secured by the United States Constitution.

28. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution of the United States. This Court has personal jurisdiction over Plaintiffs and Defendants.

29. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because one or more Defendants reside or work in this District and all Defendants reside in this State, and because

a substantial part of the acts and events giving rise to this Complaint occurred or will occur in this District.

30. This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

**FACTUAL BACKGROUND**

31. The Tennessee Constitution provides two processes for amending it: calling a constitutional convention or a public referendum. Tenn. Const. Art. XI, § 3. Relevant here, using the public referendum method, an amendment may be proposed in either house of the General Assembly where it first must pass with a majority vote in each house, then be published six months before the next General Assembly convenes, and then pass both houses of that next General Assembly by a two-thirds vote. *Id.* The General Assembly then submits the proposed amendment "to the people at the next general election in which a governor is to be chosen. And if the people shall approve and ratify such amendment or amendments by a majority of all the citizens of the state voting for governor, voting in their favor, such amendment or amendments shall become a part of this Constitution." *Id.*

32. This language in Article XI, Section 3 has been in Tennessee's Constitution since 1953. Before it was amended in 1953, this provision was the same in most material aspects, but it did not require that proposed amendments only be submitted for a vote by the citizens in a general election *in which a governor is to be chosen* and merely required that amendments be approved by a "majority of all citizens of the state voting for representative"—rather than a majority of citizens voting for governor.

33. Amendment 1 satisfied the requisite thresholds in the two General Assemblies that addressed it and was properly submitted to the people of Tennessee in the November 4, 2014 state

and federal general election. As required by Article XI, Section 3, the November 4, 2014 election was one in which a governor was to be chosen.

34. Before this election and during early voting, Defendants explicitly stated that they intended to determine whether Amendment 1 had passed by comparing the total number of votes for Amendment 1 with the total number of votes cast in the gubernatorial race—rather than determining whether a majority of voters *who voted for governor* voted in favor of Amendment 1, as required by the state constitution.

35. Plaintiffs all voted in the November 4, 2014 general election. Each plaintiff voted in the gubernatorial race and also voted not to approve Amendment 1.

36. Despite the mandate of Article XI, Section 3 of Tennessee's Constitution, Defendants tabulated the vote on Amendment 1 without determining whether majority of all citizens in the state who voted for governor voted for Amendment 1 and instead merely compared the number of votes for Amendment 1 with the number of votes required to have a majority in the gubernatorial race. Using this improper method, Defendants have indicated that Amendment 1 was (unofficially) approved by a narrow margin.

37. Based on the published unofficial totals made available by Defendants, there is no way to determine whether voters who voted in favor of Amendment 1 had also, as required by the state constitution, voted in the governor's race. Without Defendants' revealing records indicating that at least a sufficient number of voters voted both in favor of Amendment 1 and for governor, such confirmation is impossible. Moreover, as the state officials responsible for overseeing elections, Defendants alone can provide the correlating voting data.

38. What is known from the unofficial totals currently available is that the number of voters on Amendment 1 was substantially larger than the number of voters in the governor's election, suggesting that supporters of Amendment 1 followed the strategy of voting only on that

amendment in order to increase the chance of Amendment 1's approval according to the improper system of vote counting announced by Defendants.

39. Accordingly, the outcome of the vote on Amendment 1 is in serious question. The methodology used by Defendants to count the votes is fatally flawed. There can be no public confidence in the vote on Amendment 1. Moreover, Defendants' prior announcements of their method of vote tabulation encouraged supporters of Amendment 1 to vote only on the amendment, and not for governor, in order to make their votes count more than votes cast by opponents of Amendment 1. These prior announcements of the intended method of vote tabulation tainted the entire voting process.

40. Defendants' actions have harmed Plaintiffs by creating a fundamentally unfair system of voting in violation of the Fourteenth Amendment's Due Process clause. *See League of Women Voters*, 548 F.3d at 478.

41. Defendants' actions have harmed Plaintiffs by diluting their votes and thereby denying them the right to vote, *see Reynolds*, 377 U.S. at 555, in violation of the Equal Protection clause of the Fourteenth Amendment.

### COUNT I
**(Denial of Due Process – Fundamentally Unfair Voting Scheme)**

42. Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

43. As citizens of Tennessee, Plaintiffs enjoy the fundamental right to vote in Tennessee elections. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

44. By ignoring the requirement of Article XI, Section 3 to the Tennessee Constitution, Defendants have implemented a fundamentally unfair system of vote tabulation that severely burdens Plaintiffs' right to vote.

45. Defendants' actions create "an officially-sponsored election procedure which, in its basic aspect, was flawed. Due process, '[r]epresenting a profound attitude of fairness between man and man, and more particularly between individual and government,' is implicated in such a situation." *Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978) (quoting *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 163 (1951) (Frankfurter, J., concurring)).

46. Defendants' vote tabulation on Amendment 1 deprives Plaintiffs of their constitutional rights under color of state law.

47. Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

48. Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which will cause them irreparable harm.

49. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

## COUNT II
### (Denial of Equal Protection of the Laws – Disenfranchisement Through Vote Dilution)

50. Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

51. The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

52. The Equal Protection clause provides that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn*, 405

U.S. at 336. "The right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds*, 377 U.S. at 555.

53. Defendants' vote tabulation method violates the Equal Protection clause by collectively counting the votes two classes of people—Plaintiffs, along with those voters like them, who satisfied the requirements of Article XI, Section 3 of the Tennessee Constitution by voting in the gubernatorial race as well as on Amendment 1 and those who did not and merely voted on Amendment 1—to the detriment of Plaintiffs and others who complied with the Constitution. By counting votes for Amendment 1 from voters' who did not vote for governor while basing Amendment 1's passage threshold on the number of votes in the gubernatorial race, Defendants permitted and indeed encouraged voters to overweight their votes on Amendment 1 by increasing the number of votes in favor of Amendment 1 without correspondingly increasing the number of total votes needed for Amendment 1 to pass. Conversely, Plaintiffs, by virtue of having exercised their right to vote for governor, have had their votes diluted—and thus their franchise denied—when they attempted to exercise their right to vote not to approve Amendment 1.

54. By ignoring the Tennessee Constitution's mandate to calculate whether an amendment has been ratified by assessing whether a majority of the citizens who voted for governor and instead merely comparing the number of votes for Amendment 1 with the number of votes for governor, Defendants award unequal voting strength to voters who did not vote in the gubernatorial race but did vote on Amendment 1. This distribution of unequal voting strength—particularly to voters whose votes should not be counted at all—is anathema to equal protection of the laws. *See, e.g.*, *Moore*, 394 U.S. at 819.

55. As an application of state law that defies Tennessee's own constitution, this denial of equal protection of the law is not rationally related to the furtherance of any legitimate

governmental interest, let alone narrowly tailored to substantially advance any governmental interest.

56. Defendants' disenfranchisement of Plaintiffs is subject to strict scrutiny under the Equal Protection Clause.

57. Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

58. Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which will cause them irreparable harm.

59. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment as follows:

1. Declaring that Article XI, Section 3 of the Constitution of the State of Tennessee, requires that Defendants tabulate the votes on Amendment 1 based only on the number of only voters who both voted for governor and voted on Amendment 1.

2. Preliminarily and permanently enjoining Defendants from certifying the vote on Amendment 1 until they have complied with the Article XI, Section 3's counting requirements;

3. If Defendants are unable to comply with the tabulation parameters of Article XI, Section 3, declaring that the November 4, 2014 vote on Amendment 1 is void.

4. Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees according to 42 U.S.C. § 1988 and any other applicable laws; and

5. Granting such other and further relief as the Court deems just and proper.

Dated this 7th day of November 2014.

        Respectfully submitted,

        SHERRARD & ROE, PLC

By:   */s/ William L. Harbison*
        William L. Harbison (B.P.R. No. 7012)
        C. Dewey Branstetter Jr. (B.P.R. No. 9367)
        Phillip F. Cramer (B.P.R. No. 20697)
        Hunter C. Branstetter (B.P.R. No. 32004)
        150 3rd Avenue South, Suite 1100
        Nashville, Tennessee 37201
        Tel.: (615) 742-4200
        Fax: (615) 742-4539
        bharbison@sherrardroe.com
        dbranstetter@sherrardroe.com
        pcramer@sherrardroe.com
        hbranstetter@sherrardroe.com