IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRACEY E. GEORGE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-02182 |
| ) | JUDGE SHARP |
| WILLIAM EDWARD "BILL" HASLAM, ) | MAGISTRATE JUDGE BRYANT |
| as Governor of the State of Tennessee, ) | |
| in his official capacity, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**INITIAL CASE MANAGEMENT ORDER**

Pursuant to Local Rule 16.01(d), the following Initial Case Management Plan is **adopted**.

**A.** **Jurisdiction and Venue**

Plaintiffs have invoked this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343. This action arises under the Constitution of the United States and under 42 U.S.C. §§ 1981 and 1983. Plaintiffs seek declaratory and injunctive relief, attorneys' fees, expenses and costs, and such other relief that may be available to them. Defendants contest whether Plaintiffs' complaint presents a federal question or claim under either the United States Constitution or 42 U.S.C. §§ 1981 and 1983; Defendants also assert that Plaintiffs lack standing.

Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

**B.** **Plaintiffs' Theory of the Case**

Plaintiffs have brought claims for violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Plaintiffs seek to remedy Defendants' violating their federally protected voting rights by disenfranchising them and other voters by improperly tabulating votes on Constitutional Amendment 1 to the Tennessee Constitution on the November

4, 2014 state and federal general election ballot ("Amendment 1"). In tabulating the votes on Amendment 1, Defendants diluted Plaintiffs' votes and contravened Article XI, Section 3 of the Tennessee Constitution. Amendment 1 was promulgated using the referendum method of amending Tennessee's constitution. It passed the requisite readings and was to be submitted "to the people at the next general election in which a governor is to be chosen. And if the people shall approve and ratify such amendment or amendments *by a majority of all the citizens of the state voting for governor, voting in their favor*, such amendment or amendments shall become a part of this Constitution." Tenn. Const. Art. XI, § 3 (emphasis added).

Under this plain language, Amendment 1 could be ratified only if a majority of the citizens who voted for governor also approved it. But after Amendment 1 was placed on the November 4, 2014 ballot, Defendants announced that they would ignore Article XI, Section 3 and instead deem Amendment 1 ratified if the total votes in its favor constituted a majority of the total votes cast in the gubernatorial race, *regardless* of whether those who voted in favor of Amendment 1 had also voted in the governor's race. Defendants' methodology both disregarded Tennessee's constitution and afforded greater weight to "yes" votes. Amendment 1 supporters reinforced the differential weight Defendants' method created by promoting a scheme to encourage "yes" voters not to vote in the governor's race to increase the relative value of their "yes" votes. These groups exploited Defendants' announced vote tabulation to raise the numerator of the state's election fraction by voting for Amendment 1 without also adding to the denominator by voting for governor.

This scheme to dilute Plaintiffs' votes worked; for the first time the number of votes on a proposed constitutional amendment substantially exceeded the number of votes in the gubernatorial race. Without any effort to follow the Tennessee Constitution's tabulation methods, Defendants declared Amendment 1 ratified because the number of "yes" votes on Amendment 1 exceeded half of the total votes cast in the gubernatorial race. Because of Defendants' counting scheme, Plaintiffs' votes were diluted by unlawfully counted ballots. Whereas Plaintiffs' votes

were counted equally into both the numerator and the denominator of the Defendants' voting fraction, those voters who cast ballots only in favor of Amendment 1 and without voting in the gubernatorial race, as they had been encouraged by Defendants' announced intentions of tabulating the votes, were counted only as part of the numerator. Accordingly, Plaintiffs' votes against Amendment 1 were undervalued while those votes cast in accordance with Defendants' scheme were overvalued.

**C      Defendant's Theory of the Case**

This case involves the issue of what is the proper interpretation of Art. XI, § 3, of the Tennessee Constitution in determining whether a constitutional amendment proposed through the legislative process has been ratified in a referendum election, which is a question of law.

Defendants assert that Plaintiffs lack the requisite standing to invoke federal court jurisdiction as they have failed to allege any particularized injury, but rather have asserted simply a generalized grievance regarding what Plaintiffs perceive to be an illegal method of tabulating the votes on Amendment 1. Defendants further assert that Plaintiffs' interpretation of Art. XI, § 3— that a constitutional amendment may be ratified if the total number of votes cast in favor of the amendment exceeds the number of votes required to achieve a majority in the governor's race— is entirely consistent not only with the language of the constitutional provision, but with the intent and understanding of the delegates to the 1953 constitutional convention who created the current version of Article XI, § 3, and is, moreover, based on long-standing practice. Because Plaintiffs' claims are solely predicated on the erroneous assertion that Defendants' method of tabulation violates the Tennessee Constitution, they have presented no federal claim at all, and their complaint should therefore be dismissed.

Finally, Defendants assert that Plaintiffs' would-be interpretation of Art. XI, § 3 would unconstitutionally condition a voter's eligibility to vote on a constitutional amendment upon that voter's participation in the gubernatorial election without any compelling or rational state justification, thereby unconstitutionally burdening the First and Fourteenth Amendment rights of such voter. Plaintiffs' interpretation would also unconstitutionally impinge on the very important right to privacy of the ballot without furthering any compelling state interest.

**D.      Identification of the Issues**

<u>Issues Resolved:</u> The parties do not dispute venue.

<u>Issues Still Disputed</u>: Defendants challenge standing and whether Plaintiffs' complaint states a claim for federal relief. These issues are fully briefed and awaiting decision by the Court.

**E.     Need for other claims or special issues under Rules 13-15, 17-21, and Rule 23 of the Federal Rules of Civil Procedure:**

None anticipated.

**F.     Witnesses, if known, subject to supplementation for each party.**

None known.

**G.     Initial Disclosures and Staging of Discovery**

The parties shall make their Rule 26(a)(1)(A) through (E) disclosures on or before January 23, 2015.

On November 13, 2014, Plaintiffs requested information related to the November 4, 2014 election, including the total number of ballots cast in the election. Defendants predicted that they would be able to provide this information by December 5, 2014. Although Defendants did eventually share part of the requested information, Defendants still have not provided the total number of ballots cast in the election. Plaintiffs request this information be provided on or before January 16, 2015. Defendants' position is that they informed Plaintiffs on November 21, 2014, that they would be available to provide copies of the certified election results from the 95 county election commissions and Defendants agree to provide copies of these results on or before January 16, 2015.  However, these results will not reflect the total number of ballots cast statewide in the November 4, 2014, general election.  The Division of Elections is in the process of compiling that information and expects to have its report completed on or before January 30, 2015.

All discovery shall be completed by April 30, 2015. All written discovery shall be submitted in sufficient time so that the response shall be in hand by April 30, 2015.

There shall be no stay of discovery pending disposition of any motions unless otherwise ordered by the Court.

No motions related to discovery or for a protective order shall be filed until the attorneys of record have met face-to-face in an effort to resolve the dispute and then submitted a jointly

signed discovery/protective order dispute statement setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved.

The plaintiffs shall identify and disclose all expert witnesses and expert reports on or before May 22, 2015. The defendants shall identify and disclose all expert witnesses and reports on or before June 28, 2015. Any supplements to expert reports shall be filed by the close of business on July 24, 2015. Rebuttal experts, if any, shall be identified and disclosed (along with expert reports) on or before July 24, 2015.

The parties shall depose all expert witnesses on or before August 24, 2015.

**H.      Dispositive Motions**

All dispositive motions shall be filed by the close of business on September 30, 2015 and any response thereto shall be filed by the close of business on October 28, 2015. Any reply shall be filed by the close of business on November 11, 2015.

If dispositive motions are filed early, the response and reply dates shall be adjusted accordingly such that the response will be due twenty-eight days after the date the motion is filed, and the reply shall be due fourteen days after the date the response is filed.

Unless otherwise ordered by the court, the motion and response memoranda are limited to twenty pages, and the reply, if filed, is limited to five pages.

**I.      Other Deadlines**

The parties shall file all motions to amend by April 30, 2015 or within thirty days of Defendants' responses and production of documents in response to Plaintiffs' first set of discovery requests served on December 23, 2014, whichever is earlier.

**J. Subsequent Case Management Conferences**

A subsequent case management conference will occur by telephone on March 24, 2015, at 9:30 a.m. Counsel for Plaintiffs will initiate the call.

**I. Alternate Dispute Resolution**

The parties shall file a joint mediation report on or before April 10, 2015.

**K. Trial Date**

Bench trial is set to begin on March 8, 2016, at 9:00 a.m.. A pretrial conference shall be held on February 22, 2016, at 1:30 p.m. before Judge Sharp. Trial to expected to last three days.

It is so **ORDERED**.

    s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge