IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRACEY E. GEORGE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-02182 |
| ) | Chief Judge Sharp |
| WILLIAM EDWARD "BILL" HASLAM, ) | Magistrate Judge Bryant |
| as Governor of the State of Tennessee, ) | |
| in his official capacity, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local Rule 7.01, Plaintiffs[1] file this Memorandum In Support of Plaintiffs' Motion to Amend their complaint against Defendants.[2]

**I.     Introduction**

Much has transpired since November 7, 2014, when Plaintiffs first filed their original complaint asserting that the method by which Defendants tabulated the votes on Amendment 1 to the Tennessee Constitution in the November 4, 2014 election violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment by creating a fundamentally unfair election process and by disenfranchising them and other voters. On December 10, 2014, Defendants

---

[1]     Plaintiffs include: Tracey E. George, Ellen Wright Clayton, Deborah Webster-Clair, Kenneth T. Whalum, Jr., Meryl Rice, Jan Liff, Teresa M. Halloran, and Mary Howard Hayes.

[2]     Defendants include: William Edward "Bill" Haslam, Tre Hargett, Mark Goins, Herbert H. Slatery III, the State Election Commission of Tennessee, Judy Blackburn, Donna Barrett, Gregg Duckett, Tommy Head, Jimmy Wallace, Tom Wheeler, and Kent Younce.

certified the results for the majority of the races on the November 4, 2014 ballot, including the vote totals for and against Amendment 1. The results for the governor's race, however, were not certified until the Tennessee General Assembly reconvened in January 2015. Then, on February 2, 2015, after months of requests from Plaintiffs, Defendants finally released information indicating the total number of ballots cast in the November 4, 2014 election.[3]

Pursuant to the Court's Initial Case Management Order, Plaintiffs have until April 30, 2015, to amend the complaint. Docket Entry ("DE") 37: Initial Case Management Order at 5, PageID 265. Now that the certified results from the November 4, 2014 election have come into focus, Plaintiffs seek to amend their complaint to (1) include additional facts derived from certified election results and the total voter turnout for the November 4, 2014 election, (2) clarify the grounds for relief included in the original complaint as more fully articulated in Plaintiffs' subsequent filings, and (3) adjust the prayer for relief to account for developments since the suit was initially filed on November 7, 2014.

## II.     Rule 15 Standard

Under Fed. R. Civ. P. 15(a)(2), leave to amend a pleading should be freely given when justice so requires. To determine whether to grant a motion to amend, the court balances multiple factors, including undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 898 (6th Cir. 2006); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). This liberal policy allows disputes to be

---

[3] Plaintiffs have also propounded an initial round of written discovery on Defendants. Defendants, however, have thus far only offered a series of objections, rather than any substantive responses, to these requests.

resolved on the merits rather than technical objections to pleadings. *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987).

### III. Plaintiffs' Motion to Amend Should Be Granted

Plaintiffs respectfully asked that the Court grant them leave to amend for the following reasons:

First, pursuant to the Initial Case Management Order currently in effect, Plaintiffs' motion to amend is timely. Moreover, this is the first time that Plaintiffs' have sought to amend their complaint, and these amendments arise out of information that was unavailable to Plaintiffs when they filed their initial complaint. The amended complaint also responds to new factual arguments and contentions asserted by Defendants in their filings subsequent to the original complaint being filed.

Second, Plaintiffs' tendered Amended Complaint revolves around the same underlying facts and information at issue in the original complaint. Plaintiffs' First Amended Complaint does not change Plaintiffs' fundamental theory of their case or even assert any new causes of action; however, it (i) bolsters factual allegations included in the original complaint using newly released data from the election at issue, (ii) more fully articulates Plaintiffs' individual damages, (iii) provides additional authority and explanation for their legal theories, and (iv) adjusts the prayer for relief to reflect the reality that the results of the vote on Amendment 1 have already been certified. The revised allegations include:

- "Regardless of whether Defendants' tabulation method was contrary to or consistent with Article XI, Section 3, it subjected Plaintiffs—who voted both for governor and against Amendment 1—to a coordinated scheme that violated their federally-secured due process and equal protection rights. Indeed, Defendants' pre-announced tabulation method incentivized proponents of Amendment 1 to forego their own right to vote in the governor's race so as to add 'yes' votes without increasing the number of votes needed to surpass a majority of votes cast in the governor's race." (Proposed First Am. Compl. at ¶8.)

- "Examining the final results from the November 4, 2014 election demonstrates the effects of Defendants' improper counting method. For the first time in the history of the State, votes on a constitutional amendment outnumbered the votes in the governor's race. And for the first time, a concerted campaign was launched with the support of Defendants' tabulation method to double count 'yes' votes at the expense of 'no' voters." (Proposed First Am. Compl. at ¶14.)

- "Indeed, Defendants have not been able to demonstrate that Amendment 1 would have passed if votes were correctly tabulated. The voter turnout data released by Defendants confirmed that as many as 76,000 votes in favor of Amendment 1 may have been improperly tabulated, which would result in Amendment 1 falling short of passage by 24,000 votes. Defendants' refusal to provide underlying data and correlated vote results should be interpreted as an admission by Defendants—in light of their personal and political support of Amendment 1—that Amendment 1 indeed would have failed to pass under a constitutionally-appropriate tabulation method." (Proposed First Am. Compl. at ¶15.)

- "This language in Article XI, Section 3 has been in Tennessee's Constitution since 1953. Before it was amended in 1953, this provision was the same in most material aspects, but it did not require that proposed amendments only be submitted for a vote by the citizens in a general election *in which a governor is to be chosen* and merely required that amendments be approved by a 'majority of all citizens of the state voting for representative'—rather than a majority of citizens voting for governor. This language was approved as written by Tennessee voters without regard to any statements, qualifications or explanations from the delegates to the constitutional convention of 1953." (Proposed First Am. Compl. at ¶35.)

- "In its review of methods to amend Tennessee's Constitution, the Tennessee Supreme Court in *Snow v. City of Memphis*, 527 S.W.2d 55 (Tenn. 1975), specifically discusses the language relevant to this action—'by a majority of all citizens of the state voting for Representatives [subsequently changed to 'governor'], voting in their favor'—noting the 'obstacle of obtaining voter ratification of a majority *of those voting for representatives*.' *Id*. (emphasis added). Underscoring this point, *Snow* acknowledges that "only a small percentage of the voters *who voted for representatives* cast their ballots either for or against constitutional amendments, leaving the required majority o*f those voting for representatives*, unattainable." *Id.* (emphasis added). This language is substantively identical to the current language—only substituting 'governor' for 'Representatives'— and thus demands an identical interpretation: that passing an amendment under the current language of Article XI, Section 3 requires a majority of those voting for governor to vote in favor of that amendment." (Proposed First Am. Compl. at ¶36.)

- "Defendants have now asserted that Article XI, Section 3, as written, is itself unconstitutional. However, Defendants are not entitled to re-write the Tennessee Constitution on their own volition. After all, the Tennessee Constitution provides for two mechanisms for amending the constitution, and if Defendants truly believed that the

public referendum method runs afoul of the U.S. Constitution, they could have easily advised the state legislature to proceed via the constitutional convention method. Defendants did not do so." (Proposed First Am. Compl. at ¶37.)

- "On information and belief, Defendants selected, or were involved in the selection of, the voting machines utilized in the November 4, 2014 general election and could have devised a methodology to both preserve secrecy of ballot and properly correlate votes pursuant to Article XI, Section 3. Defendants chose not to do so." (Proposed First Am. Compl. at ¶40.)

- "There were a total of 1,430,117 votes cast in the November 4, 2014 election. Subtracting the difference in the number of total votes cast in the election and total votes for governor from the total number of votes for Amendment 1 demonstrates that the current election data can only confirm that, at maximum, 652,774 votes in favor of Amendment 1 were cast in compliance with Article XI, Section 3. These 652,744 'certain' votes fall 24,091 votes short of the 676,865 vote required to ratify Amendment 1." (Proposed First Am. Compl. at ¶45.)

- " . . . As indicated above, the data places the validity of 76,389 votes in favor of Amendment 1 in question. Defendants' refusal to release such data coupled with their prior public support for Amendment 1 leads one to conclude that the data in fact shows that Amendment 1 failed." (Proposed First Am. Compl. at ¶46.)

- "Plaintiffs' injury in this case arises from *their* specific votes not being counted the same as other votes. This harm is not generalized to all Tennesseans or all registered voters or even all voters who participated in the November 4, 2014 election. Indeed, voters who cast ballots only in favor of Amendment 1 were not injured at all; instead, they were rewarded by Defendants' vote tabulation method. Only those voters such as Plaintiffs had their votes devalued, and only they had their fundamental voting rights impeded." (Proposed First Am. Compl. at ¶50.)

- "Based on Defendants' calculation method, a vote on Amendment 1 from anyone who voted for governor, regardless of whether the vote was for or against Amendment 1, has less value than a vote for Amendment 1 from someone who did not vote for governor. By devaluing Amendment 1 votes from voters who voted for governor, Defendants have violated fundamental fairness." (Proposed First Am. Compl. at ¶54.)

- "Under the unconstitutional tabulation method adopted by Defendants, anyone who wanted to vote against Amendment 1 needed to vote for governor to have their vote count. Yet, under Defendants' method, someone favoring Amendment 1 may vote for governor and for the amendment (and thereby decrease the relative weight of their vote for the amendment) or just vote for the amendment (and thereby increase the relative weight of the vote for the amendment). But, using Defendants' tabulation, someone who opposes an amendment can only meaningfully register this opposition by voting for governor and not voting for the amendment. Under Defendants' scheme, a vote from someone who does not vote in the gubernatorial race and who votes against an

amendment may be permissible, but it is meaningless: such a vote would not factor into either the numerator (votes in favor of Amendment 1) or the denominator (votes cast in the gubernatorial race) of Defendants' tabulation fraction and thus has no influence." (Proposed First Am. Compl. at ¶64.)

- " . . . Moreover, Defendants' tabulation method encouraged voters who favored Amendment 1 not to vote for governor, thereby effectively deterring those voters from exercising their fundamental right to vote." (Proposed First Am. Compl. at ¶66.)

- "WHEREFORE, Plaintiffs respectfully request that this Court enter judgment as follows: (1) Declaring that Article XI, Section 3 of the Constitution of the State of Tennessee, requires that Defendants tabulate the votes on Amendment 1 based only on the number of only voters who both voted for governor and voted on Amendment 1; (2) Declaring that Defendants' vote tabulation method violates the rights of due process and equal protection guaranteed by the Fourteenth Amendment; (3) Declaring that the results for Amendment 1, as currently certified by Defendants, are void; (4) Issuing an injunction mandating that Defendants recount the vote on Amendment 1 to correlate votes in the governor's race with votes on Amendment 1; (5) If Defendants are unable to properly tabulate the vote or if such tabulation method itself as required by Article XI, Section 3 is found unconstitutional, then declaring that the November 4, 2014 vote on Amendment 1 is void . . ." (Proposed First Am. Compl. at Prayer for Relief.)

Third, allowing amendments will not prejudice Defendants in any way. The First Amended Complaint does not alter the scope of the lawsuit or adjust the ambit of discovery. As Defendants have (wrongfully) refused to participate in discovery, they cannot claim prejudice. Indeed, Defendants have yet to provide any discovery documents, so this amendment will not require any additional round of document production. Nor have Defendants propounded any discovery requests themselves, therefore obviating the need to re-issue any of their written requests. And the parties have not yet taken depositions, so there will be no need to redo any depositions.

For these reasons, Plaintiffs respectfully request that they be granted leave to amend their complaint.

Respectfully submitted,

SHERRARD & ROE, PLC

By:   /s/ *William L. Harbison*
     William L. Harbison (B.P.R. No. 7012)
     C. Dewey Branstetter Jr. (B.P.R. No. 9367)
     Phillip F. Cramer (B.P.R. No. 20697)
     Hunter C. Branstetter (B.P.R. No. 32004)
     150 3rd Avenue South, Suite 1100
     Nashville, Tennessee 37201
     Tel.: (615) 742-4200
     Fax: (615) 742-4539
     bharbison@sherrardroe.com
     dbranstetter@sherrardroe.com
     pcramer@sherrardroe.com
     hbranstetter@sherrardroe.com

     Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing was served upon the following:

| Counsel | Counsel for: | Via: |
|---|---|---|
| Janet M. Kleinfelter<br>Deputy Attorney General<br>Office of the Attorney General and Reporter<br>Public Interest Division<br>P.O. Box 20207<br>Nashville, TN 37202<br>(615) 741-7403<br>janet.kleinfelter@ag.tn.gov | Defendants | ☐ United States Mail, postage prepaid<br>☐ Hand-delivery<br>☐ Facsimile transmission<br>☐ E-Mail<br>☐ Fed Ex<br>☒ CM/ECF |

this 11th day of February, 2015.

                                                 /s/ *William L. Harbison*
                                                William L. Harbison