# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TRACEY E. GEORGE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-02182 |
| ) | Chief Judge Sharp |
| WILLIAM EDWARD "BILL" HASLAM, ) | Magistrate Judge Bryant |
| as Governor of the State of Tennessee, ) | |
| in his official capacity, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.  Plaintiffs bring this action to challenge the constitutionality of the method by which votes were counted on Constitutional Amendment 1 to the Tennessee Constitution on the November 4, 2014 state and federal general election ballot ("Amendment 1"). Defendants violated Plaintiffs' rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. Specifically, Plaintiffs' votes were diluted and Defendants' tabulation method created a fundamentally unfair voting process that resulted in certain votes in favor of Amendment 1 receiving disproportionate weight as compared to Plaintiffs' votes.

2.  Plaintiffs are registered and qualified voters who voted in the November 4, 2014 election. Plaintiffs each voted in the gubernatorial race and voted not to approve Amendment 1.

3.  Defendants are all officials or official entities of the state of Tennessee. Each defendant either oversees, administers, or regulates elections in some capacity and is charged with upholding and enforcing the state and federal constitutions.

4.  In Article XI, Section 3, the Tennessee Constitution states:

> Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals with the yeas and nays thereon, and referred to the General Assembly then next to be chosen; and shall be published six months previous to the time of making such choice; and if in the General Assembly then next chosen as aforesaid, such proposed amendment or amendments shall be agreed to by two-thirds of all the members elected to each house, then it shall be the duty of the General Assembly to submit such proposed amendment or amendments to the people at the next general election in which a governor is to be chosen. **And if the people shall approve and ratify such amendment or amendments by a majority of all the citizens of the state voting for governor, voting in their favor, such amendment or amendments shall become a part of this Constitution**.

Tenn. Const. Art. XI, § 3 (emphasis added). This section sets forth the state constitutional requirements for an amendment to the constitution to be approved and ratified.

5. Defendants tabulated the vote on Amendment 1 by examining whether the number of total votes in favor of Amendment 1, regardless of whether the voter also voted for governor, would constitute a majority of the total number of votes cast in the gubernatorial race. *See, e.g.*, Associated Press, *News Briefs from Around Tennessee at 1:58 a.m. EDT*, THE WASHINGTON TIMES, October 29, 2014, www.washingtontimes.com/news/2014/oct/29/news-briefs-from-around-tennessee-at-158-am-edt/ (quoting Blake Fontenay, spokesperson for the Secretary of State, explaining "[w]hether people vote in the governor's race doesn't affect their eligibility to vote on the amendments"); *see also* Cari Wade Gervin, *Your Guide to the four propositions of Tuesday's ballot*, THE NASHVILLE SCENE, October 30, 2014, www.nashvillescene.com/nashville/your-guide-to-the-four-propositions-on-tuesdays-ballot/Content?oid=4759989 (quoting Fontenay's statement that "[t]here is no requirement to vote in any race"); Ronald B. Buchanan [chair of the Davidson County Election Commission], *Primer for Davidson County Voters*, THE TENNESSEAN, October 12, 2014, www.tennessean.com/story/opinion/2014/10/13/primer-davidson-county-voters/ 17131215 ("The total number of votes cast in the gubernatorial election is used to determine the number of 'yes'

votes required for an amendment to pass . . . it is not necessary to vote for an amendment in order to vote in the governor's race and vice versa. Your vote is still counted."). Defendants have added further confusion surrounding the vote count on Amendment 1 by posting results on their website that do not conform to either Article XI, Section 3 or to the method contained in the public statements of a spokesperson for the Secretary of State.

6. Defendants' tabulation method flouts Article XI, Section 3's mandate that proposed amendments must be approved by "a majority of all citizens of the state *voting for governor*, voting in their favor." Instead, Defendants took the position that Amendment 1 may be ratified if the total number of votes cast in favor of Amendment 1 equaled or exceeded the number of votes required to achieve a majority in the governor's race. This interpretation ignores Section 3's plain statement that the requisite majority is comprised of citizens who voted for governor and who also voted in favor of Amendment 1.

7. Whereas the state constitution's text demands that Amendment 1 will only pass if it is approved "by a majority of all the citizens of the state voting for governor, voting in [its] favor," Tenn. Const. Art. XI, § 3, Defendants have essentially re-written Section 3 to say that Amendment 1 would pass if "the number of citizens of the state voting in its favor equals or exceeds the number of votes required for a majority in the governor's race." Put differently, if [total votes in favor of Amendment 1] / [total votes for governor] > ½, then, according to Defendants, Amendment 1 would be ratified. Defendants counted the votes on Amendment 1 without first establishing whether each "yes" voter met Section 3's threshold of having also voted for governor.

8. Regardless of whether Defendants' tabulation method was contrary to or consistent with Article XI, Section 3, it subjected Plaintiffs—who voted both for governor and against Amendment 1—to a coordinated scheme that violated their federally-secured due process and equal protection rights. Indeed, Defendants' pre-announced tabulation method incentivized

3

proponents of Amendment 1 to forego their own right to vote in the governor's race so as to add "yes" votes without increasing the number of votes needed to surpass a majority of votes cast in the governor's race. Supporters of Amendment 1 promulgated this misguided scheme. *See, e.g.*, "Tenn Williamson," *Double Your Vote on Amendment 1*, www.youtube.com/watch?v=7mnIgn-WXls (explaining that supporters of Amendment 1 can "double their vote" by voting for Amendment 1 but not voting in the governor's race) (last visited November 5, 2014) (also available at www.truthon1.org); Cathedral of the Incarnation, *Twenty Eighth Sunday in Ordinary Time— October 12, 2014*, at 4 ("You do not need to vote for governor if you do not want to. *In fact, not voting in the uncontested governor's race counts as a vote and a half for Amendment 1.*") [Attached as Exhibit A].

9. The Defendants' method for counting votes on Amendment 1, and their public statements concerning the issue, not only fail to comply with Article XI, Section 3 of the Tennessee Constitution, but also encourage the efforts of some voters to manipulate the system by voting for Amendment 1 and expressly *not* voting in the governor's election.

10. In this manner, Defendants' method for counting the number of votes regarding Amendment 1 violates each Plaintiff's right under the Due Process clause of the Fourteenth Amendment to a fair election. "The Due Process clause is implicated, and [42 U.S.C.] § 1983 relief is appropriate, in the exceptional case where a state's voting system is fundamentally unfair." *League of Women Voters v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008) (citing *Griffin v. Burns*, 570 F.2d 1065, 1078-79 (1st Cir. 1978)). Defendants' counting method presents such a fundamentally unfair system by disregarding the plain language of the state constitution and by arbitrarily developing a different standard for approving public votes on constitutional amendments. For Defendants' tabulation method to be upheld, it must withstand strict scrutiny. Because Defendants lack any valid interest—let alone a compelling governmental interest—to

4

Case 3:14-cv-02182   Document 51   Filed 03/06/15   Page 4 of 20 PageID #: 586

justify violating Plaintiffs' federally-secured constitutional rights, Defendants' vote tabulation does not survive strict scrutiny.

11. Defendants' proposed counting method also violates the Equal Protection Clause of the Fourteenth Amendment both by diluting the votes on Amendment 1 of those voters who complied with the Tennessee Constitution, engaged fully in their civic duty to vote, and exercised their right to vote for governor and by overvaluing the votes of Amendment 1 supporters who chose not to cast a vote for governor (and were indeed rewarded by Defendants for not doing so).

12. "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." *Bush v. Gore*, 531 U.S. 98, 104 (2000). "In decision after decision, [the Supreme] Court has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (string citations omitted). Defendants have treated Plaintiffs and their votes disparately, thereby effectively denying Plaintiffs' free exercise of franchise. *See Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("The right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."). Because Defendants' tabulation method burdens the fundamental right to vote, it is subject to strict scrutiny, which it cannot withstand.

13. Defendants' counting method violates the Fourteenth Amendment's Equal Protection clause by differentially valuing votes from the voters of two classes—those like Plaintiffs who voted in the gubernatorial race as well as on Amendment 1 and those who did not and merely voted on Amendment 1—to the detriment of Plaintiffs and others who voted against Amendment 1. "The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government." *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969). Defendants have valued the votes on Amendment 1 of the non-Constitution-

5

compliant voters over the votes of Plaintiffs. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush* 531 U.S. at 104-05 (2000) (citing *Harper v. Virginia Bd. of Elections,* 383 U.S. 663, 665 (1966)). This unequal weighting of improperly cast votes on Amendment 1 threatens the fundamental right to vote and cannot withstand strict scrutiny.

14. Examining the final results from the November 4, 2014 election demonstrates the effects of Defendants' improper counting method. For the first time in the history of the State, votes on a constitutional amendment outnumbered the votes in the governor's race. And for the first time, a concerted campaign was launched with the support of Defendants' tabulation method to double count "yes" votes at the expense of "no" voters.

15. Indeed, Defendants have not been able to demonstrate that Amendment 1 would have passed if votes were correctly tabulated. The voter turnout data released by Defendants confirmed that as many as 76,000 votes in favor of Amendment 1 may have been improperly tabulated, which would result in Amendment 1 falling short of passage by 24,000 votes. Defendants' refusal to provide underlying data and correlated vote results should be interpreted as an admission by Defendants—in light of their personal and political support of Amendment 1— that Amendment 1 indeed would have failed to pass under a constitutionally-appropriate tabulation method.

16. Plaintiffs bring this action for declaratory and injunctive relief against Defendants pursuant to 42 U.S.C. § 1983, Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202. Plaintiffs seek (1) a declaration that Article XI, Section 3 of the Tennessee Constitution requires that only voters who voted for governor may have their votes on Amendment 1 counted to determine whether the amendment is ratified; (2) a declaration that, Defendants' vote tabulation method, regardless of its compliance with Article XI, Section 3, violates both the Due Process and Equal Protection clauses of the Fourteenth Amendment to the

U.S. Constitution; (3) a declaration that the results for the November 4, 2014 election, as currently certified by Defendants, are void; (4) an injunction requiring Defendants to comply with the counting mechanism prescribed in Article XI, Section 3; and (5), if Defendants are unable to count the votes in compliance with the constitution, a declaration permanently voiding the vote on Amendment 1 in the November 4, 2014 election.

## THE PARTIES

17. Plaintiff Tracey E. George is a Professor of Law and Professor of Political Science at Vanderbilt University. Professor George is a resident of Nashville, Tennessee. She cast a vote for governor and a vote on Amendment 1 in the November 4, 2014 election. She wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

18. Plaintiff Ellen Wright Clayton is a Professor of Pediatrics and Professor of Law at Vanderbilt University. Dr. Clayton is a resident of Nashville, Tennessee who voted both for governor and on Amendment 1 in the November 4, 2014 election. Dr. Clayton wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

19. Plaintiff Deborah Webster-Clair is an Obstetrician and Gynecologist who resides in Brentwood, Tennessee. Dr. Webster-Clair wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

20. Plaintiff Kenneth T. Whalum Jr. is the pastor of the New Olivet Baptist Church in Memphis, Tennessee and is a resident of Memphis. Rev. Whalum wishes to have the vote on

7

Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having his vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

21. Plaintiff Meryl Rice is a social worker and small business owner who resides in Whiteville, Tennessee. Ms. Rice wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

22. Plaintiff Jan Liff is a registered nurse and lifelong resident of Nashville, Tennessee. Ms. Liff wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

23. Plaintiff Teresa M. Halloran is the volunteer coordinator for Meals on Wheels in Franklin, Tennessee, where she resides. Ms. Halloran wishes to have the vote on Amendment 1 calculated in compliance with Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

24. Plaintiff Mary Howard Hayes is a resident of Gallatin, Tennessee and the former Director of the Public Health Department of Sumner County. Ms. Hayes wishes to have the vote on Amendment 1 calculated in compliance Tennessee's Constitution and has been harmed by having her vote not to approve Amendment 1 diluted by Defendants' improper tabulation of votes.

25. Defendant William Edwards "Bill" Haslam is Governor of the State of Tennessee. Article III, Section 10 of the Tennessee Constitution requires the governor to "take care that the laws be faithfully executed." He is responsible for upholding and ensuring compliance with the state constitution. Governor Haslam also bears the authority and responsibility for the formulation and administration of the policies of the executive branch, including the Department of State, which oversees elections in the state. Governor Haslam is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. Governor

Haslam's official residence is in Nashville, Tennessee, within the Middle District. He is sued in his official capacity.

26. Defendant Tre Hargett is the Tennessee Secretary of State. The Secretary of State is a Constitutional Officer charged with overseeing the Department of State. In his official capacity, Secretary Hargett is responsible for overseeing the Division of Elections of the Secretary of State's office. Secretary Hargett is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. He is sued in his official capacity.

27. Defendant Mark Goins is the Coordinator of Elections for Tennessee. The Coordinator of Elections heads the Division of Elections. Coordinator Goins oversees the election process in Tennessee. As Coordinator of Elections, he has the duty to "[a]uthoritatively interpret the election laws for all persons administering them." Tenn. Code Ann. § 2-11-202(a)(4). Coordinator Goins is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. He is sued in his official capacity.

28. Defendant Herbert H. Slattery III is the Attorney General & Reporter of the State of Tennessee. He is sued in his official capacity because the constitutionality of Defendants' vote tabulation process is challenged in this case.

29. Defendants Judy Blackburn, Donna Barrett, Gregg Duckett, Tommy Head, Jimmy Wallace, Tom Wheeler, and Kent Younce are the members of defendant, the State Election Commission of Tennessee. All are sued in their official capacities. The State Election Commission works to maintain uniformity in elections and preserve the purity of the ballot.

## JURISDICTION AND VENUE

30. Plaintiffs bring this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 to redress the deprivation under color of state law of rights secured by the United States Constitution.

31. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution of the United States. This Court has personal jurisdiction over Plaintiffs and Defendants.

32. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because one or more Defendants reside or work in this District and all Defendants reside in this State, and because a substantial part of the acts and events giving rise to this Complaint occurred or will occur in this District.

33. This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## FACTUAL BACKGROUND

34. The Tennessee Constitution provides two processes for amending it: calling a constitutional convention or a public referendum. Tenn. Const. Art. XI, § 3. Relevant here, using the public referendum method, an amendment may be proposed in either house of the General Assembly where it first must pass with a majority vote in each house, then be published six months before the next General Assembly convenes, and then pass both houses of that next General Assembly by a two-thirds vote. *Id.* The General Assembly then submits the proposed amendment "to the people at the next general election in which a governor is to be chosen. And if the people shall approve and ratify such amendment or amendments by a majority of all the citizens of the state voting for governor, voting in their favor, such amendment or amendments shall become a part of this Constitution." *Id.*

35. This language in Article XI, Section 3 has been in Tennessee's Constitution since 1953. Before it was amended in 1953, this provision was the same in most material aspects, but it did not require that proposed amendments only be submitted for a vote by the citizens in a general election *in which a governor is to be chosen* and merely required that amendments be approved by

a "majority of all citizens of the state voting for representative"—rather than a majority of citizens voting for governor. This language was approved as written by Tennessee voters without regard to any statements, qualifications or explanations from the delegates to the constitutional convention of 1953.

36. In its review of methods to amend Tennessee's Constitution, the Tennessee Supreme Court in *Snow v. City of Memphis*, 527 S.W.2d 55 (Tenn. 1975), specifically discusses the language relevant to this action—"by a majority of all citizens of the state voting for Representatives [subsequently changed to "governor"], voting in their favor"—noting the "obstacle of obtaining voter ratification of a majority *of those voting for representatives*." *Id*. (emphasis added). Underscoring this point, *Snow* acknowledges that "only a small percentage of the voters *who voted for representatives* cast their ballots either for or against constitutional amendments, leaving the required majority o*f those voting for representatives*, unattainable." *Id.* (emphasis added). This language is substantively identical to the current language—only substituting "governor" for "Representatives"—and thus demands an identical interpretation: that passing an amendment under the current language of Article XI, Section 3 requires a majority of those voting for governor to vote in favor of that amendment.

37. Defendants have now asserted that Article XI, Section 3, as written, is itself unconstitutional. However, Defendants are not entitled to re-write the Tennessee Constitution on their own volition. After all, the Tennessee Constitution provides for two mechanisms for amending the constitution, and if Defendants truly believed that the public referendum method runs afoul of the U.S. Constitution, they could have easily advised the state legislature to proceed via the constitutional convention method. Defendants did not do so.

38. Instead, Amendment 1 underwent the public referendum method, eventually satisfying the requisite thresholds in the two General Assemblies that addressed it and submitted to the people of Tennessee in the November 4, 2014 state and federal general election. As required

by Article XI, Section 3, the November 4, 2014 election was one in which a governor was to be chosen.

39. Before this election and during early voting, Defendants explicitly stated that they intended to determine whether Amendment 1 had passed by comparing the total number of votes for Amendment 1 with the total number of votes cast in the gubernatorial race—rather than determining whether a majority of voters *who voted for governor* voted in favor of Amendment 1, as required by the state constitution.

40. On information and belief, Defendants selected, or were involved in the selection of, the voting machines utilized in the November 4, 2014 general election and could have devised a methodology to both preserve secrecy of ballot and properly correlate votes pursuant to Article XI, Section 3. Defendants chose not to do so.

41. Plaintiffs all voted in the November 4, 2014 general election. Each plaintiff voted in the gubernatorial race and also voted not to approve Amendment 1.

42. Despite the mandate of Article XI, Section 3 of Tennessee's Constitution, Defendants tabulated the vote on Amendment 1 without determining whether majority of all citizens in the state who voted for governor voted for Amendment 1 and instead merely compared the number of votes for Amendment 1 with the number of votes required to have a majority in the gubernatorial race. Defendants certified these results in derogation of their state and federal constitutional duties.

43. Using this improper method, Defendants have indicated that Amendment 1 was approved by a margin of 52,298 votes because there were 1,353,728 votes for governor (making the passage threshold 676,865) and 729,163 total votes—none of which have been correlated to votes for governor as the state constitution requires—cast in favor of Amendment 1.

44. The number of voters on Amendment 1 (1,386,355) exceeded than the number of voters in the governor's election (1,353,728). That, for the first time in Tennessee's history, there

12

were more votes on a constitutional amendment than there were in the governor's race strongly suggests that supporters of Amendment 1 followed the strategy of voting only on that amendment in order to increase the chance of Amendment 1's approval under Defendants' improper method of vote counting.

45. There were a total of 1,430,117 votes cast in the November 4, 2014 election. Subtracting the difference in the number of total votes cast in the election and total votes for governor from the total number of votes for Amendment 1 demonstrates that the current election data can only confirm that, at maximum, 652,774 votes in favor of Amendment 1 were cast in compliance with Article XI, Section 3. These 652,744 "certain" votes fall 24,091 votes short of the 676,865 vote required to ratify Amendment 1.[1]

46. Based on the certified totals made available by Defendants, there is no way to determine whether voters who voted in favor of Amendment 1 had also, as required by the state constitution, voted in the governor's race. Without Defendants revealing records indicating that at least a sufficient number of voters voted both in favor of Amendment 1 and for governor, such confirmation is impossible. Moreover, as the state officials responsible for overseeing elections, Defendants alone can provide the correlating voting data. As indicated above, the data places the validity of 76,389 votes in favor of Amendment 1 in question. Defendants' refusal to release such data coupled with their prior public support for Amendment 1 leads one to conclude that the data in fact shows that Amendment 1 failed.

47. At the very least, the outcome of the vote on Amendment 1 is in serious question. The methodology used by Defendants to count the votes is fatally flawed. There can be no public

---

[1] Seen another way, assume that A = total votes cast for governor (1,353,728); B = total votes cast in election (1,430,117); and C = total votes for Amendment 1 (729,163). If $C - (B - A) \leq (A / 2) + 1$, then Amendment 1 may not have passed if the votes were correctly tabulated. Applying the data from the November 4, 2014 election yields $729,163 - (1,430,117 - 1,353,728) \leq (1,353,728/2) + 1$, which holds true as $652,774 \leq 676,865$. Thus, the election data currently available cannot indicate that Amendment 1 has been ratified as Tennessee's constitution requires.

13

confidence in the vote on Amendment 1. Moreover, Defendants' prior announcements of their method of vote tabulation encouraged supporters of Amendment 1 to vote only on the amendment, and not for governor, in order to make their votes count more than votes cast by opponents of Amendment 1. These prior announcements of the intended method of vote tabulation tainted the entire voting process.

48. Defendants' actions have harmed Plaintiffs by creating a fundamentally unfair system of voting in violation of the Fourteenth Amendment's Due Process clause. *See League of Women Voters*, 548 F.3d at 478.

49. Defendants' actions have specifically and individually harmed Plaintiffs by diluting their votes and thereby denying them the right to vote, *see Reynolds*, 377 U.S. at 555, in violation of the Equal Protection clause of the Fourteenth Amendment.

50. Plaintiffs' injury in this case arises from *their* specific votes not being counted the same as other votes. This harm is not generalized to all Tennesseans or all registered voters or even all voters who participated in the November 4, 2014 election. Indeed, voters who cast ballots only in favor of Amendment 1 were not injured at all; instead, they were rewarded by Defendants' vote tabulation method. Only those voters such as Plaintiffs had their votes devalued, and only they had their fundamental voting rights impeded.

## COUNT I
**(Denial of Due Process – Fundamentally Unfair Voting Scheme)**

51. Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

52. As citizens of Tennessee, Plaintiffs enjoy the fundamental right to vote in Tennessee elections. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights,

14

Case 3:14-cv-02182   Document 51   Filed 03/06/15   Page 14 of 20 PageID #: 596

even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

53. Defendants have implemented a fundamentally unfair system of vote tabulation that severely burdens Plaintiffs' right to vote.

54. Based on Defendants' calculation method, a vote on Amendment 1 from anyone who voted for governor, regardless of whether the vote was for or against Amendment 1, has less value than a vote for Amendment 1 from someone who did not vote for governor. By devaluing Amendment 1 votes from voters who voted for governor, Defendants have violated fundamental fairness.

55. Defendants' actions create "an officially-sponsored election procedure which, in its basic aspect, was flawed. Due process, '[r]epresenting a profound attitude of fairness between man and man, and more particularly between individual and government,' is implicated in such a situation." *Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978) (quoting *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 163 (1951) (Frankfurter, J., concurring)).

56. Defendants' vote tabulation on Amendment 1 deprives Plaintiffs of their constitutional rights under color of state law.

57. Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

58. Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which will cause them irreparable harm.

59. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

## COUNT II
**(Denial of Equal Protection of the Laws – Disenfranchisement Through Vote Dilution)**

60. Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

61. The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

62. The Equal Protection clause provides that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn*, 405 U.S. at 336. "The right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds*, 377 U.S. at 555.

63. Defendants' vote tabulation method violates the Equal Protection clause by collectively counting the votes of two classes of people—Plaintiffs, along with those voters like them, who satisfied the requirements of Article XI, Section 3 of the Tennessee Constitution by voting in the gubernatorial race as well as on Amendment 1 and those who did not vote for governor and merely voted on Amendment 1—to the detriment of Plaintiffs and others who voted for governor in compliance with the Tennessee Constitution. By counting votes for Amendment 1 from voters' who did not vote for governor while basing Amendment 1's passage threshold on the number of votes in the gubernatorial race, Defendants permitted and indeed encouraged voters to overweight their votes on Amendment 1 by increasing the number of votes in favor of Amendment 1 without correspondingly increasing the number of total votes needed for Amendment 1 to pass. Conversely, Plaintiffs, by virtue of having exercised their right to vote for governor, have had their votes diluted—and thus their franchise denied—when they attempted to exercise their right to vote not to approve Amendment 1.

64. Under the unconstitutional tabulation method adopted by Defendants, anyone who wanted to vote against Amendment 1 needed to vote for governor to have their vote count. Yet, under Defendants' method, someone favoring Amendment 1 may vote for governor and for the amendment (and thereby decrease the relative weight of their vote for the amendment) or just vote for the amendment (and thereby increase the relative weight of the vote for the amendment). But, using Defendants' tabulation, someone who opposes an amendment can only meaningfully register this opposition by voting for governor and not voting for the amendment. Under Defendants' scheme, a vote from someone who does not vote in the gubernatorial race and who votes against an amendment may be permissible, but it is meaningless: such a vote would not factor into either the numerator (votes in favor of Amendment 1) or the denominator (votes cast in the gubernatorial race) of Defendants' tabulation fraction and thus has no influence.

65. By merely comparing the number of votes for Amendment 1 with the number of votes for governor, Defendants award unequal voting strength to voters who did not vote in the gubernatorial race but did vote on Amendment 1. This distribution of unequal voting strength—particularly to voters whose votes should not be counted at all—is anathema to equal protection of the laws. *See, e.g.*, *Moore*, 394 U.S. at 819.

66. As an application of state law that defies Tennessee's own constitution, this denial of equal protection of the law is not rationally related to the furtherance of any legitimate governmental interest, let alone narrowly tailored to substantially advance any governmental interest. Moreover, Defendants' tabulation method encouraged voters who favored Amendment 1 not to vote for governor, thereby effectively deterring those voters from exercising their fundamental right to vote.

67. Defendants' disenfranchisement of Plaintiffs is subject to strict scrutiny under the Equal Protection Clause.

17

Case 3:14-cv-02182   Document 51   Filed 03/06/15   Page 17 of 20 PageID #: 599

68. Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

69. Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which will cause them irreparable harm.

70. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment as follows:

1. Declaring that Article XI, Section 3 of the Constitution of the State of Tennessee, requires that Defendants tabulate the votes on Amendment 1 based only on the number of only voters who both voted for governor and voted on Amendment 1;

2. Declaring that Defendants' vote tabulation method violates the rights of due process and equal protection guaranteed by the Fourteenth Amendment;

3. Declaring that the results for Amendment 1, as currently certified by Defendants, are void;

4. Issuing an injunction mandating that Defendants recount the vote on Amendment 1 to correlate votes in the governor's race with votes on Amendment 1;

5. If Defendants are unable to properly tabulate the vote or if such tabulation method itself as required by Article XI, Section 3 is found unconstitutional, then declaring that the November 4, 2014 vote on Amendment 1 is void;

6. Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees according to 42 U.S.C. § 1988 and any other applicable laws; and

7. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

SHERRARD & ROE, PLC


By:   /s/ *William L. Harbison*
       William L. Harbison (B.P.R. No. 7012)
       C. Dewey Branstetter Jr. (B.P.R. No. 9367)
       Phillip F. Cramer (B.P.R. No. 20697)
       Hunter C. Branstetter (B.P.R. No. 32004)
       150 3rd Avenue South, Suite 1100
       Nashville, Tennessee 37201
       Tel.: (615) 742-4200
       Fax: (615) 742-4539
       bharbison@sherrardroe.com
       dbranstetter@sherrardroe.com
       pcramer@sherrardroe.com
       hbranstetter@sherrardroe.com

       Counsel for Plaintiffs

19

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of the foregoing was served upon the following:

| Counsel | Counsel for: | Via: |
|---|---|---|
| Janet M. Kleinfelter<br>Deputy Attorney General<br>Office of the Attorney General and Reporter<br>Public Interest Division<br>P.O. Box 20207<br>Nashville, TN 37202<br>(615) 741-7403<br>janet.kleinfelter@ag.tn.gov | Defendants | ☐ United States Mail, postage prepaid<br>☐ Hand-delivery<br>☐ Facsimile transmission<br>☐ E-Mail<br>☐ Fed Ex<br>☒ CM/ECF |

this 11th day of February, 2015.

                                          /s/ *William L. Harbison*
                                          William L. Harbison